UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD REYNOLDS,<br>　　Plaintiff, | :<br>:<br>: |
| v. | : Case No. 3:19cv1226(KAD) |
| SCOTT SEMPLE, ET AL.,<br>　　Defendants. | :<br>:<br>: |

## **INITIAL REVIEW ORDER**

**Preliminary Statement**

*Pro se* Plaintiff, Richard Reynolds ("Reynolds"), an inmate incarcerated at the Northern Correctional Institution ("Northern") brings this civil rights complaint against Defendants Commissioner Scott Semple, Lieutenants Parnishkul and Colella, Captain Guzman, Correctional Officer Faryniarz, Nurse Birks, John Doe, General Casualty Company of Wisconsin, Enviromental Site Developer and Constitution State Services Insurance Company. His claims arise out of an accident and injuries he suffered when John Doe, a truck driver, rear-ended the van in which he was being transported to federal court. For the reasons set forth below, the complaint is dismissed.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against government actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**Allegations**

On August 25, 2017, officers at Northern applied restraints, consisting of handcuffs, leg shackles and a belly chain that connected the shackles to the handcuffs, to Reynolds in preparation for his transport to federal court for a conference or hearing in a civil case. Compl., ECF No. 1, at 6 ¶¶ 20-21. Correctional officers seated Reynolds in the back of the transport van on the right side and fastened a seat belt around his waist. *Id.* ¶ 22. There were no hand-holds for Reynolds to grab onto to brace himself when the van accelerated and decelerated. *Id.* ¶ 23.

Members of the Department of Correction's Tactical Operations and Correctional Transportation Unit ("CTU"),[1] including Lieutenants Parnishkul and Colella and Captain

---

[1] Reynolds refers to this unit as the Tactical Operations/Special Operation Group or "S.O.G." *Id.* at 6 ¶ 20. The Department of Corrections' website reflects that the correct name of the unit is the Tactical Operations and Correctional Transportation Unit. *See*

Guzman and Correctional Officer Faryniarz, were responsible for transporting Reynolds to the courthouse. *Id.* at 6 ¶¶ 20, 24; at 12-13 ¶¶ 62-63, 66. Lieutenant Parnishkul drove the transport van and Lieutenant Colella sat in the front passenger seat of the van. *Id.* Correctional Officer Faryniarz drove a car behind the prison van and Captain Guzman rode in the front passenger seat of the car. *Id.*

During the trip to the courthouse, Reynolds was able to observe that Lieutenant Parnishkul drove between 75 and 95 miles per hour as he darted in and out of rush hour traffic with van's lights flashing and siren blaring. *Id.* at 6 ¶¶ 24-26; at 16 ¶ 88. At one point, Lieutenant Parnishkul had to slam on the brakes to avoid hitting the vehicle in front of him causing the upper part of Reynolds' body to be thrown forward as he remained belted into place. *Id.* at 8 ¶ 33. A truck driven by John Doe then rear-ended the prison van causing Reynolds' upper body to be thrown forward again as he remained belted into place. *Id.* ¶ 34. The impact of the truck hitting the van caused the glass in the rear window of the van to shatter. *Id.* Immediately after the collision, Lieutenant Colella turned to Reynolds and told him that he was fine. *Id.* ¶ 35. Lieutenant Parnishkul did not ask Reynolds if he was hurt and did not remain at the scene of the accident. *Id.* ¶ 37. Instead, he drove to the Bridgeport Correctional Center. *Id.* at 8-9 ¶¶ 38-39.

An officer at Bridgeport Correctional Center removed Reynolds from the van and placed him in a small holding cell. *Id.* at 9 ¶¶ 39-40. Nurse Birks asked Reynolds whether he was hurt. *Id.* ¶ 40. A CTU officer informed Nurse Birks that Reynolds was fine. *Id.* Reynolds asked Nurse Birks why she was examining him in the presence of a non-medical staff member. *Id.* ¶

---

http://portal.ct.gov/DOC/Org/Tactical-Operations-and-Correctional-Transporation-Unit (last

42. The CTU officer responded that he must remain with Reynolds at all times. *Id.* Reynolds requested that Nurse Birks respect his privacy and his rights under the Health Insurance and Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d, *et seq. Id.* ¶ 44. Nurse Birks ignored Reynold's request and continued to ask him questions in front of the CTU officer. *Id.* Reynolds informed Nurse Birks that he would not answer any questions without consulting with his attorney. *Id.* ¶ 45. Nurse Birks completed a medical incident report which Reynolds refused to sign. *Id.* ¶ 46. Prison officials at Bridgeport Correctional located another van and officers transported Reynolds to the federal courthouse for his conference/hearing. *Id.* at 10 ¶ 49.

Reynolds has experienced pain in his neck, right shoulder and lower back since the accident. *Id.* ¶ 50. He has also experienced numbness running from his right finger and thumb through his arm to his right shoulder. *Id.* ¶ 51. Upon his return to Northern, a physician prescribed multiple medications to treat Reynolds' injuries. *Id.* ¶¶ 53-54. X-rays of Reynolds' back, neck and shoulder revealed no broken bones. *Id.* at 11 ¶ 55.

**Discussion**

Reynolds alleges that Defendants Parnishkul, Semple, Guzman, Faryniarz, John Doe and Enviromental Site Developer were deliberately indifferent to his safety in violation of the Eighth Amendment; that Defendant Nurse Birks was deliberately indifferent to his medical needs in violation of the Eighth Amendment; that Defendant Nurse Birks violated his right to privacy and his right to equal protection of the laws under the Fourteenth Amendment. He further alleges that Defendants Parnishkul, Semple, John Doe and Enviromental Site Developer were negligent.

---

visited October 18, 2019).

**Section 1983 - John Doe, Eviromental Site Developer, Insurance Companies**

To state a claim under § 1983, a plaintiff must demonstrate that the injury producing conduct is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). Conduct which deprives a party of a federally protected right is fairly attributable to the state when: (1) the deprivation is caused by the exercise of a state-created right or privilege, by a state-imposed rule of conduct, or "by a person for whom the state is responsible," and (2) the party charged with the deprivation may be fairly described as a state actor. *Id.*

John Doe was the driver of the truck that rear-ended the prison van. Eviromental Site Developer owned the truck driven by John Doe. Neither are alleged to be (or appear to be) state actors. Reynolds also claims that General Casualty Company of Wisconsin insures Environmental Site Developer and Constitution State Services insures the Department of Correction. But the complaint contains no allegations against either of these entities. Accordingly the claims against John Doe, Environmental Site Developer, General Casualty Company of Wisconsin and Constitution State Services are dismissed pursuant to 28 U.S.C. § 1915A(b)(1). *See Curry v. Fread*, No. 5:10CV00154 JMM/BD, 2010 WL 2926039, at *2 (E.D. Ark. July 13, 2010) ("Because Plaintiff has failed to allege that the Insurance Company deprived him of any constitutional rights while acting under state law, his claims against the Insurance Company must be dismissed."), *report and recommendation adopted*, No. 5:10CV00154 JMM/BD, 2010 WL 2926029 (E.D. Ark. July 21, 2010); *Fiamengo v. Wadsworth*, No. 3:04 CV 569 SRU, 2004 WL 1638235, at *3 (D. Conn. July 13, 2004) (dismissing claims against Wadsworth, a private citizen who had been involved in car accident with the plaintiff and the

company that insured Wadsworth because neither was a state actor under section 1983), *aff'd*, 127 F. App'x 564 (2d Cir. 2005).

### Section 1983 – Eleventh Amendment - Monetary and Declaratory Relief
### Semple, Parnishkul, Colella, Guzman, Faryniarz, Birks

Reynolds sues Defendants Semple, Parnishkul, Colella, Guzman, Faryniarz and Nurse Birks in their individual and official capacities. He seeks compensatory and punitive damages and declaratory and injunctive relief.

### Monetary Damages

The Eleventh Amendment to the United States Constitution bars claims for monetary damages against a state actor acting in his official capacity unless there is a waiver of this immunity by statute or the state consents to suit. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). There are no allegations that the State of Connecticut has consented to suit for the claims brought against these defendants. Furthermore, the passage of §1983 was not intended to abrogate the states' immunity. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). Thus, to the extent that Reynolds seeks money damages from defendants Semple, Parnishkul, Colella, Guzman, Faryniarz and Birks in their official capacities, the request for relief is barred by the Eleventh Amendment and is dismissed. *See* 28 U.S.C. § 1915A(b)(2).

### Declaratory Relief

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Colabella v. American Institute of Certified Public Accountants*, No. 10-cv-2291(KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted).

Thus, it operates in a prospective manner to allow parties to resolve claims before either side suffers significant harm. *See In re Combustion Equip. Assoc. Inc.*, 838 F.2d 35, 37 (2d Cir. 1988). In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court held that an exception to the Eleventh Amendment's grant of sovereign immunity from suit existed to permit a plaintiff to sue a state official acting in his or her official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56. This exception to Eleventh Amendment immunity, however, "does not permit judgments against state officers declaring that they violated federal law in the *past.*" *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993) (emphasis added); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* ... to claims for retrospective relief.").

The plaintiff seeks a declaration that on August 25, 2017, defendants Semple, Parnishkul, Colella, Guzman, Faryniarz or Birks violated his Eighth and Fourteenth Amendment rights. *See* Compl. at 18-19. A declaratory judgment that the defendants violated Reynolds' federal constitutional rights in the past is barred by the Eleventh Amendment. Accordingly, the request for declaratory relief is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Section 1983 - Eighth Amendment – Deliberate Indifference to Health/Safety**
**Semple, Parnishkul, Colella, Guzman, Faryniarz**

Prisoner conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs ... or the minimal civilized measure of life's necessities." *Id.*

7

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both objective and subjective elements. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, they knew that he faced an "excessive risk to [his] health or safety" and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege that Defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

**Defendant Parnishkul**

Reynolds alleges that Defendant Parnishkul subjected him to a substantial risk of serious harm when he drove the prison van at a high rate of speed, darted in and out of rush hour traffic, slammed on the brakes to avoid hitting another vehicle and thereby caused a second vehicle to rear-end the prison van. When the collision occurred, Reynolds' was wearing handcuffs, leg shackles and a tether chain around his waist as well as seatbelt fastened across his lap. Reynolds alleges that he was unable to brace himself because there were no hand-holds in the van. He alleges that he suffered injuries to his neck, back and arm as a result of his upper body being thrown forward at the time of the collision. The Court need not determine whether these allegations might plausibly meet the objective prong of an Eighth Amendment claim because

8

Reynolds has not plausibly alleged the subjective *mens rea* prong.

The allegations regarding the Defendant Parnishkul's driving are simply allegations of negligence. Negligent conduct, however, does not meet the subjective element of a deliberate indifference claim under the Eighth Amendment. *See Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (to meet the "subjective requirement [of an Eighth Amendment claim], deliberate indifference requires 'more than mere negligence'") (quoting *Farmer*, 511 U.S. at 835); *Gamble v. Doe*, No. 18 CV 3169 (KAM), 2018 WL 6250626, at *2 (E.D.N.Y. Nov. 29, 2018) ("[A] negligent motor vehicle accident, in and of itself, is not actionable under 42 U.S.C. § 1983.") (citations omitted). *See Burns v. Davis*, No. 4:15-CV-3280, 2017 WL 4250529, at *4 (S.D. Tex. Sept. 22, 2017) (Allegations that defendant "intentionally" exceeded the speed limit or violated driving policies, without more, are insufficient to state a claim that the defendant was subjectively aware of and disregarded an "excessive risk" to inmates' health and safety.) *aff'd*, 743 F. App'x 544 (5th Cir. 2018); *Lynch v. Jane Doe Corr. Officer Blue*, No. 14 CV 6919 (VB), 2016 WL 5875098, at *3 (S.D.N.Y. Oct. 7, 2016) (Allegations that defendant was driving above the speed limit and swerving on icy roads were insufficient to support an inference of deliberate disregard for plaintiff's safety.); *Grigsby v. Cotton,* No. 08–CV–214, 2009 WL 890543, at *1 (S.D. Ga. Mar. 31, 2009) (Allegations that prison officials transported inmate in a bus that was not equipped with seat belts; that driver exceeded speed limit and collided with a truck stopped at a red light, alleged only negligent conduct and did not meet the subjective awareness requirement of an Eighth Amendment claim); *Jones v. Collins*, No. 05cv-663-JPG, 2006 WL 1528882, at *2 (S.D. Ill. June 1, 2006) (Allegations of "reckless driving or the failure to fasten seatbelt ... present, at best, claims of negligence, but a defendant can never be held

9

liable under § 1983 for negligence"); *Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 436 (S.D.N.Y. 2004) (Allegations that defendant was driving too fast for the road conditions are grounded in negligence, not criminal recklessness).

In addition, there are no allegations that would support the inference that Defendant Parnishkul had actual subjective knowledge of an excessive risk to Reynolds' safety and chose to disregard that risk. Rather, Reynolds alleges that Defendant Parnishkul ***should have known*** that his conduct, coupled with the lack of hand-holds in the van, subjected him to an excessive risk to his safety. But allegations that Defendant Parnishkul ***should have*** appreciated such risk of harm to Reynolds is not sufficient to state a claim that Parnishkul consciously disregarded an excessive risk of harm to Reynolds' health or safety. *See Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not ... [cannot] be condemned as the infliction of punishment.").

Accordingly, the Eighth Amendment claim against Defendant Parnishkul is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### Defendant Colella

The allegations against Defendant Collella are more attenuated than those against Parnishkul. Reynolds alleges that Defendant Colella was riding in the front passenger seat of the van and neglected to say anything regarding the speed at which Defendant Parnishkul was driving. And after the collision, Defendant Colella allegedly assured Reynolds that he was fine. Reynolds does not mention Defendant Colella in his description of legal claims or otherwise allege that Defendant Colella violated his constitutional rights. Reynolds assertion that Defendant Colella breached a duty of care to safely transport him to the courthouse constitutes a

claim of negligence which, as discussed above, is not actionable under §1983. *See Jabbar*, 683 F.3d at 57. The allegations against Defendant Colella fail to state a plausible claim of deliberate indifference to safety under the Eighth Amendment and the claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### Defendants Guzman and Faryniarz

Reynolds alleges that Defendant Faryniarz was driving the car following the prison van in which he was riding, but that Faryniarz could not keep up with the van. He asserts that Defendant Faryniarz should have radioed Defendants Parnishkul and Colello to request that Parnishkul slow down and that Defendant Guzman, a passenger in the car with Faryniarz, should have "stop[ped] his subordinate from running amok." Compl. at 15-16 ¶¶ 82-83.

As already discussed, allegations that Defendants Guzman and Faryniarz should have appreciated the risk of harm that the excessive rate of speed of the transport van posed to Reynolds, does not plausibly allege that either of these Defendants consciously disregarded an excessive risk of harm to Reynolds' health or safety. *See Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not ... [cannot] be condemned as the infliction of punishment."). At most, the failure to radio Defendants Parnishkul or Colello was negligent. Accordingly, the claims against Defendants Guzman and Faryniarz are dismissed for failure to state a plausible claim of deliberate indifference to safety under the Eighth Amendment. *See* 28 U.S.C. § 1915A(b)(1).

### Defendant Semple

Reynolds alleges that Scott Semple, as the Commissioner of the Department of Correction, was responsible for any and all policies and procedures that may or may not have

been followed by the other Department of Correction defendants. Compl. at 11 ¶ 61. He contends that Commissioner Semple was deliberately indifferent to his safety because other defendants did not follow prison policies, including a prison directive that required all drivers to obey traffic laws and speed limits.

"It is well settled … that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983); *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) ("[L]iability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant."). To demonstrate personal involvement, a plaintiff is required to plead that:

> 1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 837 (2d Cir. 1995) (citation omitted). Even liberally construed, Reynolds does not allege that Defendant Semple: was directly involved in his transport to federal court; was grossly negligent in managing his subordinates; formulated a policy under which the alleged constitutional violation occurred, or failed to take action after hearing that a constitutional violation had occurred. Nor has Reynolds alleged that he ever informed Semple

about the accident or conduct of Defendant Parnishkul. Thus, Reynolds has not asserted facts to satisfy the pleading requirements set forth in *Colon*.

Accordingly, Reynolds has not plausibly alleged that Defendant Semple knew of an obvious and excessive risk to his safety and consciously disregarded that risk. The Eighth Amendment deliberate indifference claim against Defendant Semple is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Section 1983 - Eighth Amendment – Deliberate Indifference Medical Needs
 Defendant Birks**

Reynolds also asserts that Defendant Nurse Birks was deliberately indifferent to his medical needs after he arrived at Bridgeport Correctional Center. To state a claim for deliberate indifference to a serious medical need, a plaintiff must meet a two-pronged test. Under the first prong, a plaintiff must demonstrate that his or her medical need was "sufficiently serious." *Salahuddin*, 467 F.3d at 279. Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin*, 467 F.3d at 279-80. Mere negligent conduct does not constitute deliberate indifference. *See id.* at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

13

In this regard, Reynolds alleges that he did not begin to experience shoulder, neck and back pain until the day after the accident. As such, the complaint does not allege a serious medical condition at the time Reynolds was seen at Bridgeport Correctional Center.

In addition, Reynolds does not allege that Defendant Nurse Birks refused to examine him or provide him with medical treatment while he was at Bridgeport Correctional Center. Rather, Reynolds asserts that Nurse Birks failed to ensure that he received medical treatment in a private setting or environment. He acknowledges that he chose not to answer any of Nurse Birks' questions regarding any injuries that he may have suffered during the van accident. Absent any allegations that Reynolds told Defendant Nurse Birks that he had suffered any injuries, it is manifest that Nurse Birks could not have been deliberately indifferent to Reynolds' medical needs. You cannot be indifferent to something about which you know nothing.

In addition, Reynolds concedes that medical staff members at Northern provided him with treatment, medication and diagnostic testing for his injuries after he returned to that facility. Thus, nor can the complaint be fairly construed to allege that Nurse Birks was responsible for any delay in Reynolds' treatment by medical staff members after the accident. The Eighth Amendment claim of deliberate indifference to medical needs against Nurse Birks is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Section 1983 - Fourteenth Amendment - Right to Privacy**
**Birks - Individual**

Reynolds alleges that after he arrived at Bridgeport Correctional Center, Nurse Birks failed to protect his right to privacy under the Fourteenth Amendment and in violation of HIPAA by asking about any symptoms or injuries that he may suffered as a result of the van accident in front of a CTU officer. HIPAA governs the confidentiality of medical records and regulates how

14

"covered entities" can use or disclose "individually identifiable health (medical) information (in whatever form) concerning an individual." 45 C.F.R. §§ 160 and 164. Although not yet decided by the Second Circuit, *see, Bond v. Connecticut Bd. Of Nursing,* 622 F. App'x. 43 (2d Cir. 2015), courts which have considered the question have determined that there is no private right of action under HIPAA. *See e.g. Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n. 4 (10th Cir.2010); *United States v. Streich*, 560 F.3d 926, 935 (9th Cir. 2009); *Acara v. Banks*, 470 F.3d 569, 570–71 (5th Cir. 2006); *Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 317 n.42 (W.D.N.Y. 2018); *Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.,* 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009)(collecting cases across multiple circuits and district courts). The court finds these decisions persuasive and further notes that in *Bond,* the Second Circuit observed that it was "doubtful" a private right of action existed though the court did not need to decide the issue to resolve the appeal. *Bond,* 622. F. App'x. at 44. Accordingly, to extent that Reynolds asserts a claim that Nurse Birks violated his confidentiality/privacy rights under HIPAA, that claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

The Due Process Clause of the Fourteenth Amendment recognizes a "right to confidentiality" which "includes the right to protection regarding information about the state of one's health." *Doe v. City of N.Y.,* 15 F.3d 264, 267 (2d Cir. 1994). The extent to which privacy interests in medical information is protected varies. Certain "unusual" conditions, including positive HIV status and transsexualism being "likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others" are afforded constitutional protection. *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999).

"[P]risoners retain a right to privacy for medical information unless (1) that disclosure was reasonably related to legitimate penological interests or (2) the information ... was not the type of sensitive medical information contemplated by the courts for constitutional protection." *Simon v. N.Y.C. Dep't of Corr.*, No. 12 CIV. 8624 JMF, 2013 WL 4792840, at *2 (S.D.N.Y. Aug. 29, 2013) (citing Powell 175 F.3d at 112).

Reynolds describes the conditions or injuries that he suffered as a result of the van accident as neck pain, right shoulder pain, lower back pain and numbness in his right hand, arm and shoulder. Compl. at 10 ¶¶ 50-51. These medical conditions are not so unusual that the disclosure of information pertaining to them rises to the level of a violation of the Fourteenth Amendment. *See Davidson v. Desai*, 817 F. Supp. 2d 166, 192 (W.D.N.Y. 2011) (no Fourteenth Amendment right to privacy protecting disclosure of information pertaining to degenerative disc disease, shoulder condition, asthma or allergies, hypertension, gastrointestinal condition); *Rush v. Artuz,* No. 00 Civ. 3436(LMM), 2004 WL 1770064, at *12 (S.D.N.Y. Aug. 6, 2004) (no Fourteenth Amendment privacy right protecting disclosure of wrist injury and stomach problems). Additionally, Reynolds alleges that he did not disclose any medical information to Nurse Birks and instead refused to answer the questions. Accordingly, the claim that Nurse Birks violated Reynolds' Fourteenth Amendment right to privacy regarding the symptoms and injuries that he may have suffered as a result of the van accident is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Section 1983 - Fourteenth Amendment -Equal Protection**
**Birks – Individual**

In the description of his legal claims, Reynolds contends that Nurse Birks' failure to adhere to doctor-patient confidentiality by speaking to him about his injuries and symptoms in

the presence of a tactical operations officer violated his Fourteenth Amendment right to equal protection of the laws. Compl. at 18 ¶ 98. He does not otherwise elaborate on this claim.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This Clause does not mandate identical treatment for each individual or group of individuals. Instead, it requires that similarly situated persons be treated the same. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985).

To state an equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980). Alternatively, an equal protection claim can sometimes be sustained even if the plaintiff does not allege "class-based" discrimination, but instead claims that he has been irrationally singled out as a "class of one." *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008). To state a claim under the class of one theory, a plaintiff "must show 'an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

Reynolds does not allege that Nurse Birks treated him differently because of his membership in a protected class or based on any other impermissible characteristic. Nor does he

compare himself to any other inmate who was similarly situated to him. Thus, Reynolds has not asserted a plausible equal protection claim against Nurse Birks and the claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**State Law Claims**

Reynolds also purports to assert a claim under Article First § 10 of the Connecticut Constitution. The court declines to exercise supplemental jurisdiction over this state law claim. *See* 28 U.S.C. § 1367(c)(3) (if federal court dismisses all federal claims, it should decline to exercise supplemental jurisdiction over supplemental state law claims).

**ORDERS**

The court enters the following orders:

**(1)** The section 1983 claims for monetary damages against defendants Semple, Parnishkul, Colella, Guzman, Faryniarz and Birks in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). All other federal claims against all Defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The court declines to exercise supplemental jurisdiction over the claim asserted under Article First § 10 of the Connecticut Constitution and state law negligence claims. *See* 28 U.S.C. § 1367(c)(3). In view of the dismissal of the complaint, the Motion for Appointment of Counsel, [**ECF No. 6**] is **DENIED** as moot.

**(2)** The Clerk is directed to enter judgment for the defendants and close this case.

SO ORDERED at Bridgeport, Connecticut this 22nd day of October 2019.

\_\_\_\_/s/_____
Kari A. Dooley
United States District Judge